Burke, J.
(dissenting). I am constrained to disagree with the decision for affirmance in this case. It is incorrect to hold that the issue of voluntariness in this case is only a fact question upon which we cannot pass. In cases such as this we are faced with a question of law, namely, whether the trier- of fact could on the evidence before it conclude beyond a reasonable doubt that these confessions were voluntary. Basically it is a question of whether the People have sustained their burden of proof. In People v. Barbato (254 N. Y. 170) this court stated' with succinctness the traditional test the People had to meet before the issue of voluntariness became merely a fact question. We there said: ‘ ‘ ‘ The question whether there is any evidence of the existence of a voluntary confession is one of law. In the first instance this question must of course be decided by the trial judge. If the evidence shows without dispute that the confession was extorted by force or fear or if a verdict that it was freely made ivould be clearly against the weight of evidence, the judge should reject it. Only where a fair question of fact- is presented should the jury be permitted to determine whether the confession is voluntary. If there is no such conflict and if the evidence points clearly to the involuntary nature of the confession the judge should exclude it as without evidence to support it.’ ” (Supra, p. 173 pemphasis supplied.)
Now, of course, with the trial court itself obliged to determine beyond a reasonable doubt that the confession was voluntarily given (Jackson v. Denno, 378 U. S. 368), its function in determining the admissibility of a confession is enlarged, but this does not alter the requirement stated in Barbato that if stich a determination ‘ ‘ would be clearly against the weight of evidence ” the confession is inadmissible as a matter of' law. "
We should also keep in mind, in considering what the People ’s burden of proof is in a confession case, the “ increasingly meticulous ” test of voluntariness developed by the United States Supreme Court in recent years. (Johnson v. New Jersey, 384 U. S. 719, 730; cf. Davis v. North Carolina, 384 U. S. 737.) Under circumstances such as we have here it is not only reasonable but also constitutionally mandated that a heavy burden of proof should be imposed on the People to establish the volun-tariness of the confession. Determination of whether the confession was a product of a will overborne or whether it was a product of defendant’s having voluntarily waived his- constitu *843 tional right to remain silent is analogous to the determination our courts are now required to mate on the issue of whether a suspect from whom a confession has been obtained voluntarily and intelligently waived his rights to remain silent and to the assistance of counsel. (Miranda v. Arizona, 384 U. S. 436, 478.) As was said in Miranda: “ This Court has always set high standards of proof for the waiver of constitutional rights * * * and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders ” (supra, p. 475). I believe that a similar requirement of proof by the People exists in this case and that their failure to meet this burden presents a question of law upon which we should pass. Treating the matter simply as a factual dispute to be decided by the triers of fact in any instance where there is some evidence of voluntariness is, in my view, a failure to fully exercise this court’s jurisdiction over questions of law.
In both People v. Barbato (supra) and People v. Valletutti (297 N. Y. 226), this court indicated that in a confession case, when a defendant’s claim of police brutality is corroborated by evidence of physical injuries obviously suffered while in custody and reasonably ascribable to the claimed assaults and the injuries are unexplained by the People, the confession is inadmissible. When read in the light of subsequent United States Supreme Court decisions in the confession area, this requirement of explanation takes on even greater significance. The only attempt at explanation of the injuries claimed by these defendants, whose claims are corroborated by the testimony of the jail physician, consists of speculation, either as to the fact of the injuries claimed or as to their origin. No evidence tending to explain the injuries is contained in the record.
In addition, of course, to the evidence of the assaults present in this case, there are other factors here present of which we are required to take account in determining whether the weight of the evidence precluded a finding of voluntariness. (See Johnson v. New Jersey, supra, p. 730.) These include such factors as: incommunicado police detention; failure to warn the suspect of his right to remain silent and to be represented *844 by counsel; and the likely fatigue of the suspect questioned through, the night by relays of police officers intent upon overcoming his will to resist their demands. Most of these factors are present here. 'However, we need not, I believe, even get to the question of what weight should be accorded these other factors. Where the evidence of brutality is as substantial as that found here, this is sufficient to bar a confession.
Defendant Cerullo’s claim that his statement was elicited through police brutality is strongly corroborated by the evidence. Even through the not entirely co-operative jail physician Cerullo’s counsel was able to bring out that Cerullo’s injuries were in fact diagnosed by the doctor as contusions of the chest, upper abdomen and head; that the doctor suspected possible fractured ribs; that he sent Cerullo to the hospital for X rays to verify this diagnosis; that he strapped his chest in a six-inch-wide bandage completely circling the chest; that he prescribed certain medications to reduce defendant’s pain; and that 10 days later, on examining the prisoner, he found that continued use of the bandage about the chest was called for.
Defendant Moccio’s claim of brutality is not as clearly established by the testimony of the jail physician but the doctor did testify as to his unqualified diagnosis of trauma to the lower abdomen and to the prisoner’s appearance of suffering from pain.
We are asked to believe that these defendants either inflicted the injuries on themselves or successfully feigned the claimed injuries in the course of their examination by a jail physician who had performed these functions at the Nassau County Jail for 15 years. But this is mere speculation. It is' not evidence satisfactorily explaining how the injuries occurred.
I would reverse and order a new trial.
Judges Van Voorhis, Scideppi, Bebgan and Keating concur in Per Curiam opinion; Chief Judge Desmond dissents and votes to reverse upon the dissenting opinion in People v. McQueen (18 N Y 2d 337, decided herewith) and reaches no other question; Judge Fuld dissents and votes to reverse upon the dissenting opinion in People v. McQueen (decided herewith); Judge Burke dissents in an opinion in which Judge Fuld concurs.
Upon reargument: As to both defendants: Judgment affirmed.